563 P.2d 1153

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**George NOBLE, Defendant-Appellant.**

**No. 10878.**

Supreme Court of New Mexico.

April 19, 1977.

Rehearing Granted Feb. 18, 1977.

Jan A. Hartke, Chief Public Defender, Don Klein, Appellate Defender, Reginald J. Storment, Appellate Defender, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Paquin M. Terrazas, Robert E. Robles, Don D. Montoya, J. Michael Francke, Asst. Attys. Gen., Santa Fe, on rehearing, for plaintiff-appellee.

## OPINION

MUSGROVE, District Judge, Sitting by Designation.

The motion for rehearing is granted. The former opinion is withdrawn and the following opinion is substituted.

Defendant was convicted of first-degree murder following jury trial in the District Court of Grant County, and was sentenced to death. He appeals.

The following are the essential facts of the case. In the early hours of May 29, 1975, the defendant followed his ex-wife to her home after having seen her with another man in a local bar. The defendant had told a friend he was going up there to "* * * do a number on both of them." Some neighbors were awakened by screams coming from the victim's house. The victim's sister, who lived next door, called the police. A seven-year-old girl, daughter of the defendant and victim, was awakened by the noise, got up, and went into the living room, saw blood gurgling out of her mother and her father standing nearby with a knife in his hand. When the police arrived, they found the defendant inside the house and the victim on the floor fatally wounded. Her throat had been cut, and she also had received several stab wounds in her throat and several head wounds. The defendant was arrested and charged with murder.

The defendant raises six points on his appeal. First, defendant claims that New Mexico's death penalty is unconstitutional and that the case must be remanded for resentencing. We agree. The penalty to be imposed in this case is life imprisonment. *State v. Rondeau*, 89 N.M. 408, 553 P.2d 688 (1976).

Second, defendant claims fundamental error occurred because there was no jury determination of competency and no valid waiver thereof. Prior to the preliminary hearing in magistrate court, counsel for defendant filed a motion in District Court, requesting an examination to determine his mental competency as provided by Rule 35(c), N.M.R.Crim.P. 35(c) [§ 41–23–35(c), N.M.S.A.1953 (Supp.1975)]. The motion was granted staying the magistrate court proceedings and ordering a psychiatric examination. Following the examination, a hearing was held at which the examining doctor testified that the defendant understood the nature and gravity of the proceedings against him, was capable of assisting in his own defense and was competent to stand trial. At the conclusion of the hearing the Court found that the defendant was mentally competent to stand trial and that there was no reasonable doubt as to his mental competency to stand trial.

Rule 35(b), N.M.R.Crim.P. 35(b) [§ 41–23–35(b), N.M.S.A.1953 (Supp.1975)] provides

that when it appears that there is a question as to the mental competency of a defendant to stand trial, any further proceedings shall be suspended until the court without a jury determines that issue, i. e. whether there is a reasonable doubt as to the defendant's present mental capacity to stand trial.

■ The Court decides the issue in one of three ways. First, the Court may decide that there is no reasonable doubt that the defendant is incompetent to stand trial, in which case further proceedings shall be conducted concerning the question of involuntary hospitalization. Second, the Court may decide there is a reasonable doubt as to defendant's competency to stand trial. In this event, the defendant has a right to have the question submitted to and answered by the same jury which is selected for and tries the case on its merits. This special interrogatory should be submitted to the jury at the time the case is submitted to it for its verdict. Third, the Court may decide that there is no reasonable doubt as to the defendant's competency to stand trial, in which case there is no question for a jury to decide. Such a determination is only subject to review for abuse of discretion. *State v. Lujan,* 87 N.M. 400, 534 P.2d 1112 (1975); *State v. Upton,* 60 N.M. 205, 290 P.2d 440 (1955); *State v. Chavez,* 88 N.M. 451, 541 P.2d 631 (Ct.App.1975); *Hoffman v. State,* 79 N.M. 186, 441 P.2d 226 (Ct.App.1968). In the present case there was no conflict in the testimony presented at the hearing concerning the defendant's competency to stand trial. No further pursuit of that question was made by defendant. We conclude that the trial court did not abuse its discretion.

■■ Third, defendant claims that the trial court erred in admitting photographs of the body of the deceased. One of the photographs shows the victim as she was found by the police in her house. The other photographs show the wounds inflicted on the victim. Defendant contends that the photographs were so inflammatory, prejudicial and irrelevant that they should have been excluded. We disagree. The photo-

graphs were used to illustrate, clarify and corroborate the testimony of witnesses concerning the scene of the crime, wounds of the victim and identity of the deceased. Defendant's counsel concedes that the admission of photographs into evidence is a discretionary matter with the trial court, subject only to a review for an abuse of that discretion. Defendant has the burden to show such abuse. He has failed to meet that burden in this case. *State v. Victorian,* 84 N.M. 491, 505 P.2d 436 (1973); *State v. Upton, supra; State v. Holden,* 85 N.M. 397, 512 P.2d 970 (Ct.App.), cert. denied, 85 N.M. 380, 512 P.2d 953 (1973).

■ Fourth, defendant claims that the trial court erred in allowing testimony of Dawn Noble, the seven-year-old daughter of defendant and victim, because she was not a competent witness and because the prejudicial effect of her testifying outweighed the probative value of her testimony. Prior to the young girl's testimony, an extensive examination out of the presence of the jury was made by the defense counsel, the prosecutor and the judge concerning the girl's understanding of her obligation to tell the truth. The record of that examination clearly demonstrates that she understood her duty to tell the truth. The guidelines for determining whether a child is competent to testify were set out in *State v. Manlove,* 79 N.M. 189, 192, 441 P.2d 229, 232 (Ct.App.), cert. denied, 79 N.M. 159, 441 P.2d 57 (1968).

> In each instance the capacity of a child of tender years is to be investigated, and the trial court must determine from inquiries the child's capacities of observation, recollection and communication, and also the child's appreciation or consciousness of a duty to speak the truth. It then lies within the sound discretion of the trial court to determine, from the child's intelligence and consciousness of a duty to be truthful, whether or not the child is competent to testify as a witness.

Here the trial court followed the guidelines. We are of the opinion the court properly determined that the young girl was a competent witness. Counsel argues that N.M.

R.Evid. 603 [§ 20–4–603, N.M.S.A.1953 (Supp.1975)] requires more than that announced in *Manlove.* We disagree. Counsel claims that even if the child was a competent witness, the prejudicial effect of her testimony outweighed any probative value, and cites N.M.R.Evid. 403 [§ 20–4–403, N.M.S.A.1953 (Supp.1975)]. Our review of the testimony leads us to the opposite conclusion. The evidence presented by the testimony was relevant, the essential part was noncumulative, and it had considerable probative value. The trial court was correct in denying the motion to exclude the testimony.

■ Fifth, defendant claims that the trial court erred in refusing to direct a verdict of not guilty by reason of insanity. There was a disputed factual question presented by the testimony concerning the sanity of defendant at the time of the crime. Dr. Hernandez, called by the defense, was of the opinion that defendant was suffering from a mental disease, designated as a convulsive disorder of the *petit mal* type, and that this type of mental disease could cause defendant not to know what he was doing, not to understand the consequences of the act, and not to be able to prevent himself from doing it. Dr. Shelton, called by the State, was of the opinion that defendant did not have a mental disorder and that defendant knew the nature and quality of his act. Dr. Shelton did not detect any epilepsy.

Counsel recognizes that the rule in New Mexico is that expert testimony on the issue of insanity is not binding of the factfinder and that the jury may believe or disbelieve expert testimony as it chooses. *State v. Victorian, supra; State v. Moore,* 42 N.M. 135, 76 P.2d 19 (1938); *State v. James,* 85 N.M. 230, 511 P.2d 556 (Ct.App.), cert. denied, 85 N.M. 228, 511 P.2d 554 (1973). The evidence presented a question of fact which was properly submitted to the jury to decide.

■ Sixth, defendant claims that it was error for the trial court to instruct the jury with N.M.U.J.I.Crim. 2.00 [2nd Repl. Vol. 6, N.M.S.A.1953 (Supp.1975), at 295] in advance of the effective date because the instruction changed the elements of the crime of first-degree murder. The trial court instructed the jury with N.M.U.J.I. Crim. 2.00, supra. Defendant argues that the instruction (1) omits the element that the killing must be unlawful, (2) contravenes the definition of express malice set forth by the legislature in § 40A–2–2, N.M. S.A.1953 by allowing an inference of intent from the facts and circumstances of the case, and (3) sets an unreasonably vague definition for the very important concept of "deliberation." Instruction 2.00 does not change the necessary elements to be proven for a conviction of first-degree murder.[1] "Unlawful: means not authorized by law. *State v. Chenault,* 20 N.M. 181, 147 P. 283 (1915). "Unlawful" is equivalent to "without excuse or justification." *Territory v. Gonzales,* 14 N.M. 31, 89 P. 250 (1907). Section 40A–2–9, N.M.S.A. (1953) states: "Whenever any person is prosecuted for a homicide, and upon his trial the killing shall be found to have been excusable or justifiable, the jury shall find such person not guilty and he shall be discharged." For those circumstances where a killing is excusable or justified, see §§ 40A–2–6 through 8, N.M.S.A.1953. Every killing of a person by another is presumed to be unlawful, and only when it can be shown to be excusable or justifiable will it be held otherwise. When the evidence permits, excuse or justification may be raised as a defense and decided by the factfinder. Initially, the absence of excuse or justification is not an element of homicide to be proven by the prosecution. In the present case no such issue was presented, no instruction was requested, nor would the evidence have permitted it.

Defendant argues that in the past the jury had to be instructed that a necessary element of first-degree murder was express malice and that § 40A–2–2(A), supra, re-

---

1. This issue has already been addressed by this court. See *State v. Valenzuela,* 90 N.M. 25, 559 P.2d 402 (1976).

 

quires that express malice be " * * * manifested by external circumstances capable of proof." He further argues that N.M. U.J.I.Crim. 2.00 equates express malice with deliberate intention to take away life, which it does, but that the jury is permitted to infer a deliberate intention to take a life from " * * * all of the facts and circumstances of the killing." He concludes that " * * * all of the facts and circumstances of the killing" is so different from " * * * manifested by external circumstances capable of proof" that it somehow changes the law. We cannot indulge in such specious semantics.

This court, in discussing express malice and first-degree murder, stated in *State v. Hamilton,* 89 N.M. 746, 751, 557 P.2d 1095, 1100 (1976):

This problem should be resolved by the new Uniform Jury Instructions for Criminal Cases, which became effective September 1, 1975. The new instruction on first degree murder, N.M.U.J.I.Crim. 2.00, does not use the phrase "malice aforethought, either express or implied," but instead discusses "deliberate intention to take away the life of" the victim. We are confident that the confusion raised by the terms "express" and "implied" malice will now be eliminated. See generally Institute of Public Law and Services, Committee Commentary to N.M.U.J.I. Crim. 2.00, New Mexico Uniform Jury Instructions Criminal Approved Committee Commentaries (1975).

We can only say what was there anticipated is now a reality.

 Defendant claims the guidelines in the instruction for consideration of deliberate intention are too vague. We disagree. The language is clear, unambiguous and remarkably free of "legalese."

Defendant claims error in the trial court's use of N.M.U.J.I.Crim. 41.00 [2nd Repl. Vol. 6, N.M.S.A.1953 (Supp.1975), at 326] before its effective date, because it does not deal specifically with the issue of burden of proof of sanity. This contention is without merit. See *State v. Wilson,* 85 N.M. 552, 514 P.2d 603 (1973). Defendant

did not offer an instruction or object to the one given. Objections to instructions cannot be raised for the first time on appeal where defendant neither objected to the instructions at trial nor tendered any written request. *State v. Rodriquez,* 81 N.M. 503, 469 P.2d 148 (1970).

The defendant's conviction is hereby affirmed. The cause is remanded only for the purpose of sentencing the defendant to life imprisonment.

McMANUS, C. J., and EASLEY and PAYNE, JJ., concur.

SOSA, J., dissenting only on the basis that the question of defendant's competence and the issue of his guilt or innocence should not both be submitted to the same jury.