671 P.2d 640

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**William Wayne GILBERT, Defendant-Appellant.**

**No. 13443.**

Supreme Court of New Mexico.

Oct. 17, 1983.

D'Angelo, McCarty & Vigil, Catherine Baker Stetson, Albuquerque, for appellant.

Paul Bardacke, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for appellee.

Janet Clow, Chief Public Defender, Martha A. Daly, Santa Fe, amicus curiae.

## OPINION

STOWERS, Justice.

Defendant William Wayne Gilbert was tried by jury and convicted in the District Court of Bernalillo County for two counts of kidnapping in the first degree with firearm enhancement, two counts of criminal sexual penetration in the second degree with firearm enhancement, and two counts of first degree murder with aggravating circumstances. The victims of the crimes charged were Kenn and Noel Johnson. For the murder of Kenn Johnson the jury found

the aggravating circumstance of NMSA 1978, Section 31–20A–5(B) (Repl.Pamp. 1981). For the murder of Noel Johnson the jury found the aggravating circumstances of NMSA 1978, Sections 31–20A–5(B) and (G) (Repl.Pamp.1981). The jury unanimously agreed that Defendant be sentenced to death for each of the three aggravating circumstances. Defendant was sentenced to eighteen years plus one year on each count of kidnapping, and nine years plus one year on each count of criminal sexual penetration. These sentences were to run consecutively. Based on the jury's finding of aggravating circumstances, Defendant was sentenced to death for each count of first degree murder.

Several of the issues raised have been settled in other opinions from this Court, but in the interest of completeness we will dispose of all points raised in this appeal.

## CONFESSION

Failure to Suppress Defendant's Confession.

Defendant was arrested on January 19, 1980, following an incident involving gunfire at the American Sandwich Shop in Albuquerque. Later that day Defendant confessed to six murders including those of Kenn and Noel Johnson. The chronology of events, Defendant's claims, and our decisions on the issues are set out in detail in *State v. Gilbert*, 98 N.M. 530, 650 P.2d 814 (1982). In that case Defendant appealed from his conviction for the murder of Barbara McMullen and raised an issue identical to his first point of appeal in the present case. We again hold that no error was committed with regard to admitting Defendant's confession, and we adopt the recitation of facts and our rationale as set out in *State v. Gilbert, id.*, and *State v. Gilbert*, 99 N.M. 316, 657 P.2d 1165 (1982). *See also Oregon v. Bradshaw*, —— U.S. ——, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983).

Trial Court's Refusal to Instruct the Jury that the Truth of Exculpatory Matter in Defendant's Confession must be Presumed Unless Refuted.

Defendant asserts that parts of the confession admitted into evidence constitut-

ed exculpatory matters, the truth of which must be presumed unless refuted by the State. The trial court allowed Defendant's statement to be admitted, but ruled that the State was not bound to accept the truth of the entire statement. By relying on statements indicating that he "suffered from an irresistible urge to rape and kill," Defendant misconceives what constitutes exculpatory evidence. Exculpatory evidence is evidence reasonably tending to negate guilt. *State v. Gonzales,* 95 N.M. 636, 624 P.2d 1033 (Ct.App.1981). The allegedly exculpatory statements concerning urges suffered by Defendant are inconsistent with other portions of his confession. Furthermore, they constitute neither a complete defense nor sufficient basis to establish an insanity defense. Neither the State nor the jury must accept Defendant's statements or testimony, in view of all the evidence in the case. *See State v. Lopez,* 79 N.M. 282, 442 P.2d 594 (1968); *see also State v. Vigil,* 87 N.M. 345, 533 P.2d 578 (1975) (jury not bound to accept Defendant's statements as true). The trial court correctly refused the instruction.

## JURY

The "Witherspoon Doctrine" and the Failure to Remove Jurors for Cause.

▪ Defendant contends that the trial court's automatic exclusion for cause of potential jurors based on their views of capital punishment was error. First, such automatic exclusions violate the equal protection clause of the United States Constitution and the New Mexico Constitution, *see* U.S. CONST. amend. XIV, § 1; N.M. Const., art. II, § 18, by arbitrarily singling out capital cases as the only cases in which the State is permitted to exclude veniremen on the bases of their views on punishment. Second, because the jury that convicts a defendant also decides his sentence, *see* NMSA 1978, §§ 31–18–14 through 31–18–21 (Repl.Pamp.1981) (Criminal Sentencing Act), the automatic exclusion of veniremen who are not "death qualified" forces the defendant to face an unrepresentative jury not only for his sentencing but also for

determining his guilt or innocence. Third, studies indicate that a "death-qualified" jury is conviction prone.

As Defendant does not contend that any particular juror was improperly disqualified from sitting in this case, we view his argument as a general constitutional attack on the very process of death qualifying. This Court previously has answered adversely to Defendant the issues he raises. *State v. Trujillo,* 99 N.M. 251, 657 P.2d 107 (1982); *see also State v. Hutchinson,* 99 N.M. 616, 661 P.2d 1315 (1983).

A review of the record reveals that the trial court in this case correctly followed constitutional and statutory requirements in conducting the death qualification of the jury in defendant's trial. *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980); *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Death qualification, properly conducted, is not grounds for reversal. *State v. Trujillo.*

Trial Court's Failure to Dismiss for Cause a Prospective Juror Who was in Contact with Defendant's Former Father-in-law.

▪ Defendant asserts error by the trial court in refusing his challenge for cause of a venireman who worked with Defendant's former father-in-law at Sandia Laboratories. The venireman described the relationship as strictly casual, and stated that he was not aware of circumstances regarding Defendant's former father-in-law's family. We have reviewed the entire voir dire of this venireman and find no indication that he would have been less than fair, unbiased, and impartial. The trial court's discretion in excusing a juror for cause is reviewed solely for manifest error or a clear abuse of that discretion. *State v. Martinez,* 95 N.M. 445, 623 P.2d 565 (1981); *State v. Burrus,* 38 N.M. 462, 35 P.2d 285 (1934). We do not find that the trial court abused its discretion.

Trial Court's Refusal to Excuse for Cause Two Accepted Jurors.

▪ Defendant asserts that the trial court erred in failing to dismiss two jurors

for cause because of the possibility that those two jurors had overheard a conversation between two veniremen in which at least one or both of the two veniremen indicated a belief that Gilbert was guilty. It is uncontested that the trial court questioned the two jurors and that both denied hearing any such conversation. Defendant presented no evidence to indicate that the jurors heard such a conversation. The trial court did not abuse its discretion. *See State v. Martinez,* 95 N.M. 445, 623 P.2d 565 (1981); *State v. Padilla,* 91 N.M. 451, 575 P.2d 960 (Ct.App.1978).

Trial Court's Excusal and Subsequent Reseating of a Potential Juror.

■ Defendant argues that the trial court erred in excusing and subsequently reseating a prospective juror on the final jury selection list. During *voir dire,* a prospective juror expressed reservations about the death penalty and was then excused for cause. Defendant objected under the *Witherspoon* doctrine. *See Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Later, the same prospective juror was summoned by the trial court, questioned further and reseated on the final prospective juror list. Defendant objected and now claims that such a procedure could engender confusion in the prospective juror's mind and thereby deny Defendant a fair trial. In final jury selection, regular and alternate jurors were selected before the prospective juror's number was reached.

The trial court explained to the prospective juror why she had been recalled. The juror received the explanations and admonitions given to all the other prospective jurors. We do not find that the trial court abused its discretion. *See State v. Martinez,* 95 N.M. 445, 623 P.2d 565 (1981); *State v. Padilla.*

Trial Court's Dismissal of a Seated Juror.

■ During the course of the trial the court received information that one of the seated jurors was schizophrenic, suffered from seizures and was under a doctor's care. The trial court informed counsel for both sides, and proceeded to investigate the matter by consultation with the juror's attending physician. The doctor considered the juror to be "flaky" and strongly recommended the juror's recusal as being in the best interest of the juror. The trial court excused the juror and Defendant objected without stating any reasons.

We find neither prejudice to the defendant, nor an abuse of discretion on the part of the trial court. *See State v. Padilla; cf. State v. Gallegos,* 88 N.M. 487, 542 P.2d 832 (Ct.App.), *cert. denied,* 89 N.M. 6, 546 P.2d 71 (1975) (trial court's duty to see that an accused is tried by a properly qualified jury). The trial court did not err in dismissing this juror.

PROCEDURE

Trial Court's Refusal to Quash the Indictment Because of the Nature and Manner of the Presentation of Evidence to the Grand Jury.

■ Defendant alleges that the District Attorney failed to present certain evidence regarding Defendant's mental state and evidence regarding Defendant's state of intoxication at the grand jury proceedings. Neither transcripts nor tapes of the grand jury proceedings have been included in the appellate record for review by this Court. Defendant has the obligation to ensure that a proper appellate record is provided to this Court for review of alleged errors. *State v. Perez,* 95 N.M. 262, 620 P.2d 1287 (1980). This Court cannot review matters outside the record. *Id.; State v. Smith,* 92 N.M. 533, 591 P.2d 664 (1979).

■ Defendant also alleges prejudicial remarks by the District Attorney at the grand jury proceedings. Defendant claims that the State improperly referred to the widespread publicity of this case and widened the scope of the grand jury inquiry to include considerations of other alleged homicides, which were not the subject of the present case. Portions of the grand jury proceedings were read into the record by defense counsel and therefore made a part of the appellate record. However, it is apparent from those selected portions that the State was careful to advise the grand

jury that they should consider only the question of a crime involving the homicides of Kenn and Noel Johnson. This conduct is not so prejudicial as to vitiate the indictment. *Cf. State v. Saiz,* 92 N.M. 776, 595 P.2d 414 (Ct.App.1979) (prosecutor's comment to grand jury regarding dismissal of defendant's previous indictment not inherently prejudicial).

Trial Court's Refusal to Compel Election and Refusal to Direct a Verdict Based on Insufficient Evidence to Support the Kidnapping Charges.

Defendant was charged with two counts of kidnapping and two counts of criminal sexual penetration. Defendant asserts that the trial court erred by not requiring the State either to elect between or merge the separate counts of kidnapping and criminal sexual penetration. Defendant further asserts that there was insufficient evidence to establish the offense of kidnapping and that the trial court erred in not directing a verdict on the kidnapping counts.

Although Defendant claims that he moved to sever counts and to compel an election by pretrial motions, the pretrial motions did not raise the questions Defendant now argues. To the extent that Defendant relies upon his motion for a directed verdict on the grounds that there was insufficient evidence to support the kidnapping charges, the transcript of proceedings concerning said motion does not show that the question now raised was raised in the motion for a directed verdict. The question raised in this issue is therefore not properly before this Court. NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.R. 308 (Repl.Pamp.1983); *see* NMSA 1978 Crim., Child.Ct., Dom.Rel. & W/C App.R. 501(a)(4) (Repl.Pamp.1983); *State v. Day,* 94 N.M. 753, 617 P.2d 142, *cert. denied,* 449 U.S. 860, 101 S.Ct. 163, 66 L.Ed.2d 77 (1980).

Trial Court's Denial of Defendant's Request to Exclude Consideration of the Death Penalty as to the Felony Murder Alternatives of the Two Counts of First Degree Murder.

 This contention is without merit. In New Mexico a felony murder cannot become a potential death penalty offense unless the felony in question is enumerated in NMSA 1978, Section 31–20A–5 (Repl. Pamp.1981). Defendant engaged upon specific felonies with the concomitant intent to murder the victims toward or at the conclusion of the underlying felonies. § 31–20A–5(B). To claim that he therefore is less culpable, warranting a less severe sanction of the law, is illogical. We find New Mexico's Capital Punishment Statutes, NMSA 1978, Sections 31–20A–1 through 31–20A–6 (Repl.Pamp.1981) to the extent they permit the death penalty to be imposed for felony murder committed in the course of certain specific felonies and with intent to kill in the commission of such felonies, constitutionally sound. *Cf. Culberson v. State,* 379 So.2d 499 (Miss.1979), *cert. denied,* 449 U.S. 986, 101 S.Ct. 406, 66 L.Ed.2d 250 (1980).

## HEARSAY AND PHOTOGRAPHS

Admission of Testimony Regarding Kenn Johnson's Arrest on Charge of Possession of Marijuana.

 Defendant asserts that the trial court allowed into evidence testimony that was inadmissible hearsay. On cross-examination of a State witness, Defendant created the impression that Kenn Johnson had a felony conviction. When the State attempted to rebut that implication through the testimony of Johnson's mother, Defendant objected. Mrs. Johnson had begun to relate what she had learned from a telephone conversation with her son about his 1974 arrest. Defendant objected on grounds of hearsay and no personal knowledge. The jury was excused, and proffer was made. The trial court inquired whether the defense had conducted an investigation as to the truth of the 1974 incident. As the defense had not, the trial court ruled that the information should go to the jury since Defendant had left the impression it was a felony conviction. A defendant cannot be heard to complain on appeal that he was prejudiced by evidence which he introduced into the case. *State v. Smith,* 92 N.M. 533, 591 P.2d 664 (1979).

 Mrs. Johnson then testified concerning the circumstances surrounding the

arrest. No specific evidence was adduced as to whether the conviction was a felony or a misdemeanor. On cross-examination Mrs. Johnson acknowledged that Kenn Johnson was convicted for possession of marijuana, but the degree was never specified.

Even assuming *arguendo* that the trial court erred in permitting Mrs. Johnson to testify concerning the telephone call, Defendant establishes no prejudice to his case. *See* NMSA 1978, Evid.R. 103(a) (Repl.Pamp. 1983); *Proper v. Mowry*, 90 N.M. 710, 568 P.2d 236 (Ct.App.1977). Error, if any, was harmless beyond any doubt. *See State v. Muniz*, 95 N.M. 415, 622 P.2d 1035 (1981); *State v. Moore*, 94 N.M. 503, 612 P.2d 1314 (1980); *see also Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Admission Into Evidence of Photographs of the Two Victims.

Defendant complains that the trial court erred in admitting "numerous gory and inflammatory photographs of Kenn and Noel Johnson" despite substantial testimony concerning the crime scene. We have reviewed both the photographs and the related portions of the record and find that the trial court was especially careful to admit only those photographs that served to explain, illustrate, or corroborate the testimony of the witnesses concerning the scene of the crime and the wounds of the victims. Photographs are relevant and admissible for the purpose of clarifying and illustrating testimony. *State v. Hutchinson*, 99 N.M. 616, 661 P.2d 1315 (1983); *State v. Upton*, 60 N.M. 205, 290 P.2d 440 (1955). The photographs were properly admitted. *State v. Stephens*, 93 N.M. 368, 600 P.2d 820 (1979); *State v. Noble*, 90 N.M. 360, 563 P.2d 1153 (1977); *see State v. Garcia*, 663 P.2d 60 (Utah 1983).

## CHEMICAL TESTING

Trial Court's Denial of the Motion to Dismiss the Charge of Criminal Sexual Penetration or in the Alternative, to Exclude the State's Evidence Relating to Tests Done on a Wooden Spoon.

Defendant claims the trial court erred in failing to exclude evidence of a chemical test for the presence of acid phosphotase on a wooden spoon alleged to have been used by Defendant in the commission of criminal sexual penetration. Defendant claims that because washings from the spoon became contaminated and were discarded, the actual evidence was lost. Defendant argues that he was therefore denied due process and the right to confrontation. The trial court ordered that the defense be allowed to perform independent tests of the spoon, but denied the motion to dismiss or to preclude evidence or testimony relating to the tests performed earlier by the State.

The factors to consider in determining whether deprivation of evidence is reversible error are set forth in *State v. Chouinard*, 96 N.M. 658, 634 P.2d 680 (1981), in which this Court adopted the three-part test devised earlier in *State v. Lovato*, 94 N.M. 780, 782, 617 P.2d 169, 171 (Ct.App.1980):

1) The State either breached some duty or intentionally deprived the defendant of evidence;

2) The improperly 'suppressed' evidence must have been material; and

3) The suppression of this evidence prejudiced the defendant.

*State v. Chouinard*, 96 N.M. at 661, 634 P.2d at 683 (citations omitted).

None of these factors are present here. Any alleged materiality was insignificant when considered against Defendant's confession that he compelled Noel Johnson to penetrate herself sexually with the shaft end of the wooden spoon while he watched. Defendant asserts prejudice, but the mere claim of prejudice is insufficient to establish it. *State v. Smith*, 92 N.M. 533, 591 P.2d 664 (1979).

We find that the trial court did not err in denying the motion to dismiss or in allowing admission of the State's evidence relating to tests done on the wooden spoon.

3. Trial Court's Admission of Expert Testimony Regarding Results of Chemical Testing.

An expert witness testified about the chemical testing for acid phosphotase. In

response to Defendant's questions on cross-examination, the witness stated that the positive or negative cutoffs were established by statistical data and as such were not opinion but fact. Defendant moved that this testimony be stricken as invading the province of the jury and going to matters beyond the expertise of the witness. The trial court then allowed the State to further question the witness concerning what parts of his testimony were opinion and what parts dealt with facts. The expert testified that the results of the testing were facts, but that what the figures meant was a matter of his expert opinion. On further cross-examination the witness testified as to matters of his opinion. Defendant asserts that the trial court abused its discretion in not striking inadmissible testimony. Defendant further asserts that the trial court neither cautioned the jury nor gave any sort of curative instruction.

 The admission of expert testimony or other scientific evidence is within the sound discretion of the trial court and will not be reversed absent a showing of the abuse of that discretion. *State v. Chouinard,* 96 N.M. 658, 634 P.2d 680 (1981). In this case the State was able to rehabilitate the witness, and we do not see that the court abused its discretion in refusing to strike his testimony. Defendant did not request the trial court to caution the jury or give a curative instruction. The trial court is not to be faulted for failing to do what it has not been asked to do. *State v. Martinez,* 97 N.M. 316, 639 P.2d 603 (Ct.App. 1982); *State v. Vallejos,* 89 N.M. 23, 546 P.2d 871 (Ct.App.1976).

## INSANITY DEFENSE

Trial Court's Denial of Motion for Bifurcation of Defendant's Trial on the Issues of Sanity and Guilt or Innocence.

 Defendant advances several reasons why his trial should have been bifurcated. He asserts that the joinder of two phases of the trial prejudiced him by limiting his right to present different, though interlocking defenses. Defendant further argues that a single trial which considers both the guilt or innocence and insanity is a violation of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article II, Section 18 of the New Mexico Constitution and that it would violate his privilege against self-incrimination under the Fifth Amendment of the United States Constitution and under Article II, Section 15 of the New Mexico Constitution. Defendant contends that the jury could not reasonably be expected to set aside inculpatory material in his statements and his prejudicial prior conduct and limit this to the issue of Defendant's mental state.

The reasons advanced are without merit. There was no proper basis for either an insanity issue or an insanity instruction. Furthermore, Defendant presented no evidence of insanity in his case in chief. The trial court properly followed the applicable Rules of Criminal Procedure. *See* NMSA 1978, Crim.P.R. 40 (Repl.Pamp.1980).

Trial Court's Failure to Stop the State from Adopting a Position Contrary to that which it Previously had Maintained.

 In his opening statement, Defendant claimed that he would establish that he killed Kenn and Noel Johnson in self-defense during an aborted drug transaction. This remained Defendant's theory of the case until the State introduced into evidence Defendant's statements that he was at times seized by an uncontrollable urge to kill and rape. Defendant initially objected to the admission of these statements on the grounds that they constituted evidence of character and were therefore in violation of the New Mexico Rules of Evidence. *See* NMSA 1978, Evid.R. 404(a) (Repl.Pamp. 1983). The State then took the position that this statement of irresistible urge to rape and kill was admissible as proof of motive and intent. *See* NMSA 1978, Evid.R. 404(b) (Repl.Pamp.1983). Defendant withdrew his objection to the evidence and subsequently conceded that he suffered from an irresistible urge to rape and kill and that this was the motive for the crime. At this point, Defendant abandoned his

self-defense theory. Thereafter, Defendant introduced no evidence tending to establish the defense asserted in his opening statement, and no self-defense instruction was tendered. Defendant now asserts that he relied to his detriment on the position that an irresistible urge to rape and kill was the motive for the crime. Because of this reliance, he abandoned his theory of self-defense.

A review of the record reveals that Defendant abandoned all objections other than those made at pretrial to admission of his statements. This would include the present contention that Defendant was prejudiced by the State's adoption of a position contrary to that which it previously had maintained. Furthermore, Defendant's trial tactics do not provide him a basis for relief in this appeal. *State v. Gillihan,* 85 N.M. 514, 514 P.2d 33 (1973); *see State v. Hutchinson,* 99 N.M. 616, 661 P.2d 1315 (1983).

Trial Court's Refusal to Submit the Requested Insanity Instruction to the Jury.

▆ Defendant refers this Court to the following excerpt from his confession, which was admitted into evidence:

I just "flip out," and when I do, I kill. Then I rape. Thank God it doesn't happen a great deal. But that's just the way it is. I get this urge that's in the adrenalin. I can't stop it. I can't control it. I try.

Based on this statement, Defendant alleges that the trial court erred in failing to instruct the jury on the defense of insanity. Defendant asserts or cites no other evidence as grounds for the insanity defense. The trial court found no basis in the evidence for an insanity instruction, and we have found none. The trial court's ruling was correct. *See State v. Hartley,* 90 N.M. 488, 565 P.2d 658 (1977) (setting forth the essential elements of an insanity defense).

## CONSTITUTIONALITY OF NEW MEXICO'S CAPITAL PUNISHMENT STATUTES

Defendant challenges the constitutionality of New Mexico's capital punishment statutes, NMSA 1978, Sections 31–20A–1 through 31–20A–6 (Repl.Pamp.1981), on six grounds. The New Mexico Public Defender Department also submitted a brief of amicus curiae challenging the statutes' constitutionality.

A. Defendant first asserts that the capital punishment statutes are unconstitutional because they neither require any specific finding by the jury on mitigating circumstances nor provide any standard by which the jury determines that the aggravating circumstances outweigh the mitigating circumstances. This Court has already decided this issue adverse to Defendant. *State v. Garcia,* 99 N.M. 771, 664 P.2d 969, *cert. denied,* —— U.S. ——, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983). *See Gray v. Lucas,* 677 F.2d 1086 (5th Cir.1982).

▆ B. Defendant next asserts that the capital punishment statutes impermissibly require him to carry the burden of proof and the risk of nonpersuasion at the sentencing phase of trial. Defendant argues that if the evidence is inconclusive, or if defense counsel does not or cannot present the evidence effectively, the defendant must be put to death. We are not persuaded by Defendant's argument.

Section 31–20A–3 provides for a proceeding in which the jury must specify and unanimously find beyond a reasonable doubt at least one of the aggravating circumstances enumerated in Section 31–20A–5. The jury must also unanimously specify that the sentence of death should be imposed pursuant to Section 31–20A–2. In providing the jury the necessary guidance by which to effectuate the statutes, this Court has promulgated oral and written instructions that apprise the jury that the burden of establishing the aggravating circumstances remains at all times upon the State. *See* NMSA 1978, UJI Crim. 39.10, 39.11, 39.14 through 39.20, 39.31, 39.32 (Repl.Pamp.1982); *see also State v. Garcia.*

Defendant does not contend that the instructions as given were improper in any particular. Rather, Defendant asserts the constitutional invalidity of the New Mexico capital punishment statutes on the grounds

that this law requires him to assume the burden of proof and the risk of non-persuasion. Defendant's contention that if he presents no mitigating circumstances or presents them poorly, this essentially condemns him to a mandatory death is without merit. Both the burden of proof and the burden of final persuasion rest squarely upon the State. *See Gray v. Lucas.*

■ C. We have considered Defendant's claim that the jury has unlimited and unrestrained discretion during the sentencing phase of the trial. We find his argument without merit. Under New Mexico's statutes, a defendant is afforded substantial constitutional safeguards by the limitation on the aggravating circumstances as set forth in Section 31–20A–5, and the virtually unlimited mitigating circumstances provided for in Section 31–20A–6. *See Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

■ D. Defendant claims that the New Mexico statutes are unconstitutional because the provisions requiring a bifurcated trial on the issues of guilt and sentencing operate to deny due process of law and equal protection. In essence, Defendant claims that once the jury had convicted him of the criminal offenses, the jury was biased and was not able fairly and impartially to weigh the evidence for and against the death penalty.

The legislative mandate is that "all evidence admitted at the trial shall be considered and additional evidence may be presented as to the circumstances of the crime and as to any aggravating or mitigating circumstances." NMSA 1978, § 31–20A–1(C) (Repl.Pamp.1981). Indeed, liberal admission of evidence for consideration by the sentencing authority is necessary for a just result. As the United States Supreme Court has stated, "[w]e think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision." *Gregg v. Georgia,* 428 U.S. 153, 204, 96 S.Ct. 2909, 2939, 49 L.Ed.2d 859 (1976) (citation omitted). Firsthand observation of the evidence adduced at trial provides the jury with the best information possible to make the weighty decisions involved in both guilt determination and sentencing. The bifurcated trial to one jury does not offend constitutional principles. *Cf. People v. Lewis,* 88 Ill.2d 129, 58 Ill.Dec. 895, 430 N.E.2d 1346 (1981).

■ E. Defendant claims that the mitigating circumstances relating to a defendant's having "no significant history of prior criminal activity," NMSA 1978, § 31–20A–6(A) (Repl.Pamp.1981), is unconstitutionally vague and indefinite. Amicus argues that arbitrary and capricious sentencing will occur because this mitigating circumstance fails in objectivity. We disagree. We are not persuaded that the wording is vague and indefinite as to render Section 31–20A–6(A) unconstitutional. As the Supreme Court of Florida stated in answer to a similar contention, "[a]s to what is significant criminal activity an average man can easily look at a defendant's record, weigh traffic offenses on the one hand and armed robberies on the other, and determine which represents significant prior criminal activity." *State v. Dixon,* 283 So.2d 1, 9 (Fla.1973); *see also People v. Lewis,* 88 Ill.2d 129, 58 Ill.Dec. 895, 430 N.E.2d 1346 (1981); *State v. Holtan,* 197 Neb. 544, 250 N.W.2d 876 (1977).

F. We previously discussed Defendant's final challenge to New Mexico's capital felony sentencing act in *State v. Garcia.* In that case we held that the death penalty in and of itself, does not violate federal or state constitutional mandates against cruel and unusual punishment.

## PROPORTIONALITY REVIEW

■ Although it was not raised as an issue on appeal, we have reviewed Defendant's case on the grounds of excessive or disproportionate punishment, following the guidelines set forth by this Court in *State v. Garcia,* 99 N.M. 771, 664 P.2d 969, *cert. denied,* —— U.S. ——, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983). In comparing this case with *State v. Hutchinson,* 99 N.M. 616, 661 P.2d 1315 (1983) and *State v. Simonson,*

100 N.M. 297, 669 P.2d 1092 (1983), we find that Defendant's sentence of death for the murders of Kenn and Noel Johnson was neither excessive nor disproportionate.

The judgment of the jury is therefore affirmed. This case is remanded to the trial court to set the date of execution which must be not less than sixty nor more than ninety days from the date of this mandate on the judgment pursuant to NMSA 1978, Section 31–14–1.

IT IS SO ORDERED.

PAYNE, C.J., and FEDERICI and RIORDAN, JJ., concur.

SOSA, Senior Justice, specially concurring on all issues except the issue of the imposition of death.

SOSA, Senior Justice, specially concurring.

I concur with the affirmance of the defendant's convictions for the reasons stated in the majority opinion. However, I respectfully dissent on the issue of the imposition of the death sentence. I would hold that New Mexico's death penalty statute is unconstitutional and would remand this cause for the imposition of a sentence of life imprisonment for the reasons stated in my specially concurring opinion in *State v. Garcia*, 99 N.M. 771, 664 P.2d 969, *cert. denied*, —— U.S. ——, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983).