This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                  **NO. 29,574**

**DONALD WING,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen Townsend, District Judge**

Gary K. King, Attorney General
Andrea Sassa, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**WECHSLER, Judge.**

Defendant Donald Wing appeals from the district court's judgment, sentence and commitment to the New Mexico Department of Corrections. He was convicted of numerous counts of criminal sexual penetration of a minor, criminal sexual contact with a minor, sexual exploitation of children by manufacturing, sexual exploitation of children by possession, and child solicitation by electronic communication. He argues that (1) his trial counsel did not provide him effective assistance; (2) he was entrapped into child solicitation by electronic communication device; (3) his conviction of child solicitation by electronic communication device violates the freedom of speech clause of the First Amendment to the United States Constitution; (4) the State engaged in prosecutorial misconduct that violated his due process rights; (5) the district court erred in allowing Dona Wing to testify and in admitting her deposition testimony; (6) police officers violated his rights under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution by securing his residence before obtaining a search warrant; and (7) the district court erred in admitting unauthenticated electronic evidence. We affirm.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

In order to establish a prima facie case of ineffective assistance of counsel, a defendant has the burden of showing that (1) "counsel's performance fell below that

of a reasonably competent attorney," and (2) "that the deficient performance prejudiced the defense." *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729 (internal quotation marks and citation omitted). This standard requires the defendant to demonstrate that the errors of counsel "were so serious as to deprive the defendant of a fair trial" such that the results of the trial are not reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We review counsel's performance in a "highly deferential" manner; "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 689-90. An appellate court "will not second guess the trial strategy and tactics of the defense counsel." *State v. Gonzales*, 113 N.M. 221, 230, 824 P.2d 1023, 1032 (1992).

Under this strict standard, Defendant has failed to demonstrate a prima facie case of ineffectiveness of counsel in his argument to this Court. Although Defendant states several ways in which he contends his counsel was deficient, he has not pointed out the manner in which any of his claims of his counsel's deficient performance resulted in prejudice that altered the result of the trial. *See Strickland*, 466 U.S. at 696 (stating that "a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors"). As a result, Defendant has not shown prejudice to his

defense, in accordance to the second requirement of *Strickland* with regard to any of his allegations. On this basis alone, we reject Defendant's argument.

Moreover, Defendant has not demonstrated that counsel's performance was below that of a reasonably competent attorney on the record before us. We explain these conclusions.

Defendant asserts that his counsel did not "invoke the rule" to bar the State's witnesses from listening to testimony on the first day of trial. However, Defendant does not explain either why this decision constituted a deficient performance or how it prejudiced his defense.

Defendant makes several arguments about his counsel's closing argument. He states that his counsel described him in a negative way, described Defendant's acts in a manner to help prove Defendant's guilt, tacitly admitted Defendant's guilt "by crying and saying '[y]ou're not judging his innocence, you're judging the [S]tate's case.'" Defendant argues that counsel's argument "rambled about Jesus and the army" and "did more harm than good." We have listened to the recording of the closing argument and do not agree with Defendant that it violates that strict standard set forth in *Strickland*. The case was a difficult one, and the State's evidence was strong. To the extent that counsel cried and referred to Jesus and the army, he could have been attempting to appeal to the jury's emotions to favor Defendant, whom he

4

characterized at times in a pathetic way. By asking the jury members what they would think under the circumstances, he intended to show that by using common sense they would conclude that Detective Frank Dart entrapped Defendant. "Bad tactics and improvident strategy do not necessarily amount to ineffective assistance of counsel." *State v. Orona*, 97 N.M. 232, 234, 638 P.2d 1077, 1079 (1982). We cannot say that counsel was ineffective because he chose the strategy he did.

Defendant also argues that the docketing statement filed on appeal describes Defendant in a negative way. However, counsel's statements in the docketing statement did not affect the trial, and we do not consider them in determining whether Defendant did not receive a fair trial because of ineffective assistance of counsel.

Defendant raises arguments related to the search of Defendant's residence. He argues that his counsel "tacitly admitted to being underprepared" because he did not discover the police activities in searching Defendant's residence until one week before trial. He further argues that counsel renewed his motion to dismiss without citing any case law. For neither of these arguments does Defendant state how he suffered prejudice. He does not discuss the merits of the motions to suppress that were denied by the court.

In connection with the motions to suppress, Defendant also argues that counsel stated in his third motion to suppress that the police officers intentionally misled the

5

magistrate who issued the search warrant and then made inconsistent statements in his docketing statement on appeal. However, as we have discussed, statements in the docketing statement are not relevant to Defendant's assertion that his counsel provided ineffective assistance that resulted in Defendant's convictions at trial.

Defendant further contends that counsel provided ineffective assistance of counsel by failing to move to sever the child pornography charges from the criminal sexual penetration charges. Although he asserts that "the presence of child pornography was prejudicial," he does not state the manner in which it affected the trial. A claim of prejudice alone does not establish prejudice. *See State v. Gilbert,* 100 N.M. 392, 399, 671 P.2d 640, 647 (1983) ("[T]he mere claim of prejudice is insufficient to establish it.").

Defendant raises concern about counsel's actions regarding the child pornography charges, claiming that counsel did not seek clarification, did not know "how to match up the images and the charges," and subjected Defendant to potential double jeopardy violations. Yet, Defendant does not explain the details of his concern and fails to demonstrate how the actions he describes affected the trial. Defendant additionally argues that counsel was ineffective at trial and at sentencing by accepting Detective Jimmy Dearing as a computer expert, failing to request an expert to help identify potential issues, failing to call Defendant or other witnesses as

part of the defense, failing to investigate mitigating circumstances, failing to present pictures of Defendant showing his tattoos and scars, failing to object to prosecutorial misconduct, and failing to introduce the polygraph examination of Betty Lewis. However, Defendant does not discuss the manner in which his counsel fell below the performance required of him or the manner in which the result of the trial would have been different if counsel had performed differently.

Nor can we credit Defendant's argument that cumulative error deprived him of a fair trial. Defendant has not established a prima facie case of ineffective assistance of counsel for any of the instances he has alleged. Our ruling does not foreclose Defendant from filing a habeas corpus petition to pursue his claim of ineffective assistance of counsel. *See State v. Herrera*, 2001-NMCA-073, ¶ 37, 131 N.M. 22, 33 P.3d 22 (noting preference of habeas corpus proceeding when record on appeal does not establish prima facie case of ineffective assistance of counsel).

**ENTRAPMENT**

Defendant moved the district court to dismiss the charge of child solicitation by electronic device on the basis that he was entrapped by the actions of Detective Dart. The district court submitted the question to the jury by way of jury instruction. On appeal, Defendant argues that the district court erred by not granting his motion to dismiss as a matter of law.

A district court may recognize an entrapment defense as a due process violation as a matter of law if police officers "either used unconscionable methods or advanced illegitimate purposes in the course of a police investigation[.]" *State v. Vallejos*, 1997-NMSC-040, ¶ 43, 123 N.M. 739, 945 P.2d 957. In denying Defendant's motion, the district court concluded that Detective Dart's posing as a twelve-year-old child was not unconscionable, did not advance an illegitimate purpose, or was not otherwise patently wrongful conduct. It based its conclusion on NMSA 1978, Section 30-37-3.2(D) (2007), which states that "[i]n a prosecution for child solicitation by electronic communication device, it is not a defense that the intended victim of the defendant was a peace officer posing as a child under sixteen years of age." Because Section 30-37-3.2(D) expressly permits the type of police action that could be the foundation for the district court's dismissal as a matter of law, the district court did not err by allowing the jury to determine the validity of the entrapment defense.

**CONSTITUTIONALITY OF SECTION 30-37-3.2**

Defendant argues that Section 30-37-3.2, establishing the charge of solicitation by electronic communication device, is unconstitutional because it criminalizes the constitutionally protected conduct of free speech. However, in order for this Court to consider Defendant's argument on appeal, Defendant must establish that he preserved the argument in the district court in such a manner as to allow the district court to rule

on the merits of Defendant's argument. *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]"). To this end, the Rules of Appellate Procedure require an appellant to state the manner in which an issue on appeal was preserved. Rule 12-213(A)(4) NMRA.

Defendant does not state in his brief in chief how this argument was raised in the district court. However, we do know that it was raised in some fashion. The district court stated in its nunc pro tunc order denying Defendant's motion to dismiss by reason of entrapment

> Defendant's passing argument that the statute criminalizing child solicitation by electronic communication device is unconstitutional was not well developed. Presuming legislation to be constitutional, . . . Defendant's motion to dismiss on that basis was also denied.

The preservation requirement is designed to alert the district court to a claim of error so that it has the opportunity to correct mistakes and to provide the other party the opportunity to present an opposing position. *See State v. Gomez*, 1997-NMSC-006, ¶ 29, 122 N.M. 777, 932 P.2d 1. The district court's statement indicates that Defendant did not properly develop the argument to enable either the State to properly respond or the court to properly rule. We conclude that Defendant did not properly preserve it for appeal and decline to address it.

**PROSECUTORIAL MISCONDUCT**

Defendant argues that the prosecutor violated Defendant's due process rights by engaging in prosecutorial misconduct. He cites as examples of misconduct that (1) the prosecutor threatened Lewis with prosecution if Defendant did not accept a plea offer and (2) the prosecutor introduced the perjured testimony of Dona in her deposition.

Defendant does not inform this Court on appeal how he preserved his argument of prosecutorial misconduct in the district court. As a result, we review it on appeal to determine whether there was fundamental error. *See State v. Clements,* 2009-NMCA-085, ¶ 19, 146 N.M. 745, 215 P.3d 54 ("This Court will not search the record to find whether an issue was preserved where [the d]efendant does not refer this Court to appropriate transcript references."); *State v. Trujillo*, 2002-NMSC-005, ¶ 52, 131 N.M. 709, 42 P.3d 814 (stating that an unpreserved claim of prosecutorial misconduct is reviewed on appeal for fundamental error). "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *Id.* ¶ 52 (internal quotation marks and citation omitted).

As to Defendant's first claim, any threat concerning a plea bargain did not affect the jury verdict because Defendant did not enter a plea, and the case went to trial. There was no fundamental error. With regard to Defendant's second claim,

Defendant contends that Dona's deposition testimony was perjured because she testified that Defendant sexually abused her in the deposition when she did not do so in a Safehouse interview. The Safehouse interview was not introduced at trial and is not part of the record on appeal. As a consequence, this Court cannot determine whether there was any inconsistency in Dona's statements. Moreover, if there were an inconsistency, Defendant had the ability to cross-examine to address credibility issues. Because Defendant does not point to anything in the record from which this Court could determine that there was prosecutorial misconduct, we are unable to conclude that there was fundamental error.

**DONA WING'S COMPETENCY TO TESTIFY**

Defendant argues that the district court erred in determining that Dona, age four, was competent to testify at trial. He further contends that Dona was pressured to name Defendant as a perpetrator in her testimony because of her youth. A witness is competent to testify if the witness has "a basic understanding of the difference between telling the truth and lying, coupled with an awareness that lying is wrong and may result in some sort of punishment." *State v. Hueglin*, 2000-NMCA-106, ¶ 24, 130 N.M. 54, 16 P.3d 1113 (internal quotation marks and citation omitted). We address the district court's admission of evidence under an abuse of discretion standard of review. *State v. Woodward*, 121 N.M. 1, 4, 908 P.2d 231, 234 (1995).

On the State's motion, and despite Defendant's objection, the district court ordered an expert evaluation to determine Dona's competency to testify and the potential traumatic impact upon her if she testified. Subsequently, after Defendant contended that Dona's competency and potential trauma were not issues, the district court arranged an interview of Dona to address the issues. The result was a videotaped deposition in which counsel for the State and Defendant asked questions of Dona. In the deposition, the district court judge asked Dona questions to ascertain if she understood the difference between truth and lies and determined that Dona was competent to testify. Dona identified herself in photographs with Defendant indicating that Defendant had exploited her.

At a later hearing, the parties agreed that an edited version of the deposition would be shown to the jury rather than Dona testifying before the jury. Defendant then changed his position, moving that Dona be evaluated to determine her competence to testify and the potential trauma of testifying. Defendant's counsel argued that Dona's identification of the photographs was error, indicated that she could not remember correctly, and demonstrated her incompetence. Defendant's counsel contended that Dona was traumatized during the deposition.

On appeal, Defendant contends that the district court erred in allowing the deposition testimony because of Dona's youth and because "Dona was pressured into

12

naming [Defendant] as the perpetrator and coached in her presentation." As to Dona's youth, Defendant argues, citing *State v. Manlove*, 79 N.M. 189, 192, 441 P.2d 229, 232 (Ct. App. 1968), that the district court has the obligation to "determine from inquiries the child's capacities of observation, recollection and communication, and also the child's appreciation or consciousness of a duty to speak the truth." The district court asked Dona questions concerning her understanding of the difference between truth and lies and found that Dona was competent to testify. Defendant does not specify how the district court erred in its questioning or finding. We conclude that it did not abuse its discretion in determining that Dona was competent to testify.

As to Defendant's argument that Dona was pressured, Defendant states that Dona's mother was present at the deposition. However, Defendant does not indicate how Dona's mother's presence pressured Dona or otherwise indicate how Dona otherwise received pressure. As Defendant has not explained how the district court abused its discretion, we cannot conclude that it did.

**SEARCH WARRANT**

After arresting Defendant, Detective Dart interviewed Defendant at the police station. In the interview, Defendant stated that he had numerous images of nude children and children performing sex acts with adults on his computer in his home. Detective Dart applied for a search warrant to search Defendant's computer system.

13

In his affidavit, Detective Dart stated the need for immediate seizure of the evidence because it was "extremely vulnerable to tampering or to destruction through error, electrical outages, and other causes" and could be "easily hidden, altered or destroyed" by Defendant's common law wife who resided at Defendant's residence or another third party. He therefore requested the "issuance of a Night Time Search Warrant." The search warrant authorizes a nighttime search because "evidence may be destroyed or removed." It was executed "around 11:30 p.m."

On appeal, Defendant contends that his rights under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution were violated by the magistrate's issuance of a warrant to search his residence during nighttime hours. He argues that because the police had secured the residence while they were seeking the issuance of the warrant, there was no justification for the nighttime warrant as there was no likelihood that the evidence would be removed or destroyed. We review de novo to determine whether there was reasonable cause to support a nighttime search. Rule 6-208(B) NMRA; *State v. Garcia*, 2002-NMCA-050, ¶ 7, 132 N.M. 180, 45 P.3d 900.

This Court addressed a similar issue in *Garcia*. In that case, the defendant also argued that a nighttime search was not necessary because the police had the scene secured and under surveillance. *Garcia*, 2002-NMCA-050, ¶ 18. We discussed that

a nighttime search was generally justified "based upon a justified apprehension that the evidence within the house would be removed, hidden or destroyed before morning." *Id.* ¶ 16 (internal quotation marks and citation omitted). We held that, even though the scene may have been secured, it was not unreasonable to issue a nighttime warrant because "circumstances, foreseen or unforeseen, could have required the police to abandon surveillance before daylight arrived." *Id.* ¶ 18

Similarly, in this case, it was not unreasonable for a nighttime warrant to have been issued. Not only could have the circumstances of the surveillance changed, but, as the affidavit states, electrical outages or disturbances or third parties could conceivably affect the evidence. The district court did not err in upholding the nighttime search.

**ELECTRONIC EVIDENCE**

Lastly, Defendant argues that the district court erred in admitting the State's electronic evidence removed from Defendant's computer because it was not authenticated. Defendant does not state in his brief in chief the manner in which he preserved this argument for appeal. *See* Rule 12-213(A)(4) (requiring an appellant to state the manner in which an issue for appeal was preserved). We will not search the record for support of Defendant's contention. *State v. Martin*, 90 N.M. 524, 527, 565 P.2d 1041, 1044 (Ct. App. 1977) (stating that, when the appellant has failed to state

15

appropriate transcript reference to basis for preservation, appellate court will not search the record to determine if issue is preserved), *overruled in part on other grounds by State v. Wilson*, 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994). Thus, we will not address the issue on appeal.

**CONCLUSION**

We affirm the district court's judgment, sentence and commitment to the New Mexico Department of Corrections.

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**LINDA M. VANZI, Judge**